United States District Court
Southern District of Texas
**ENTERED**
April 19, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNSECURED CLAIM POOL SUB-TRUST OF THE LIQUIDATION TRUST OF LILIS ENERGY, INC. AND ITS DEBTOR AFFILIATES, | § § § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:22-CV-02084 |
| RONALD D ORMAND, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Plaintiff brought this suit alleging that Defendants breached their fiduciary duties and violated securities laws. Defendants moved to dismiss. ECF No. 15. Defendants are correct that Plaintiff lacks standing to assert the claims alleged in the Complaint. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss.

### I.  BACKGROUND

Plaintiff is the Unsecured Claim Pool Sub-Trust of the Liquidation Trust of Lilis Energy, Inc. and its Debtor Affiliates. On June 28, 2020, Lilis Energy and its affiliates (collectively, "Debtors"), filed voluntary chapter 11 bankruptcy petitions. ECF No. 1 ¶ 1. Defendants Ronald Ormand, Glenn Dawson, and Joseph Daches were directors and officers of Debtors. *Id.* ¶ 2.

The Sub-Trust alleges that Defendants breached their fiduciary duties and violated securities law by participating in or knowingly permitting the Debtors to engage in fraudulent and illegal conduct. *Id.* ¶ 4. Specifically, the Sub-Trust alleges that this conduct includes (1)

1

manipulating Debtors' production and reserve data in public filings; and (2) unlawfully firing two whistleblower employees. *Id.*

The Bankruptcy Court confirmed the Debtors' Joint Liquidating Chapter 11 Plan, which included a Liquidation Trust Agreement. *Id.* ¶ 17. The Liquidation Trust Agreement reserved certain causes of action. *Id.* ¶ 16(b). As discussed in more detail below, the parties dispute whether the reserved causes of action include the claims that the Sub-Trust now asserts.

The Sub-Trust brought two causes of action: (1) violations of sections 10(b) and 20(a) of the Exchange Act; and (2) breach of fiduciary duty. Defendants moved to dismiss. ECF No. 15. The Sub-Trust responded, ECF No. 16, and Defendants replied, ECF No. 17.

## II.     STANDARD OF REVIEW

At the motion-to-dismiss stage, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[I]n deciding whether to grant a motion to dismiss, a district court may not 'go outside the complaint.'" *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012) (quoting *Scanlan v. Tex. A&M Univ.,* 343 F.3d 533, 536 (5th Cir. 2003)). "There is one recognized exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Id.*

Here, the plan documents are referenced in the Complaint and are central to it. Accordingly, the Court considers the plan documents in analyzing the Motion to Dismiss. The

Court declines, however, to consider other documents that are external to the Complaint. The Court also declines to convert the Motion to Dismiss into a Motion for Summary Judgment because the Motion can be fully resolved without reference to other external documents.

### III. ANALYSIS

Here, the central question is whether the Sub-Trust has standing to bring this case. As discussed below, the Sub-Trust may bring only those claims that were specifically reserved for the Sub-Trust in the chapter 11 plan documents. The claims at issue here are not properly asserted by the Sub-Trust. So, they must be dismissed.

"The filing of a chapter 11 petition creates an estate comprised of all the debtor's property, including 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009) (quoting 11 U.S.C. § 541(a)(1)). "The estate includes causes of action belonging to the debtor." *Id.* "By definition then, a cause of action for breach of fiduciary duty owed to the corporation that is property of the corporation at commencement of the chapter 11 case becomes property of the debtor's estate[.]" *Id.*

"A chapter 11 plan of reorganization or liquidation then settles the estate's causes of action or retains those causes of action for enforcement by the debtor, the trustee, or a representative of the estate appointed for the purpose of enforcing the retained claims." *Id.* at 387 (citing 11 U.S.C. § 1123(b)(3)). "To achieve the plan's goals, the retained assets of the estate may be transferred to a liquidating trust." *Id.* (citing 11 U.S.C. § 1123(a)(5)(B)). A plan therefore may "transfer to a trustee of a liquidating trust the authority to enforce an estate's claims for breach of fiduciary duties owed to the corporation and to distribute the proceeds of successful suits." *Id.*

"After the reorganization plan is confirmed by the bankruptcy court, the debtor (or its representative) will have standing to bring claims that the debtor reserved in the reorganization plan but will not have standing to bring claims that were not reserved in the plan." *In re MPF Holdings US LLC*, 701 F.3d 449, 454 (5th Cir. 2012). "For a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions." *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008). "The reservation must be specific and unequivocal." *Id.* (cleaned up). "Though the degree of specificity involved in a plan's reservation of claims will often vary, the reservation must, at a minimum, be specific enough to put creditors on notice of any claim the debtor wishes to pursue after confirmation." *In re SI Restructuring Inc.*, 714 F.3d 860, 864 (5th Cir. 2013) (cleaned up).

This rule "is a logical consequence of the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time." *United Operating*, 540 F.3d at 355 (cleaned up). "The purpose of the rule is to put creditors on notice of any claim the debtor wishes to pursue after confirmation and enable creditors to determine whether a proposed plan resolves matters satisfactorily before they vote to approve it." *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 550 (5th Cir. 2011) (cleaned up). "Absent specific and unequivocal retention language in the plan, creditors lack sufficient information regarding their benefits and potential liabilities to cast an intelligent vote." *Id.* (cleaned up).

The Sub-Trust contends it may bring the claims at issue here because (A) they are among the Designated Retained Causes of Action that are reserved for the Sub-Trust; or alternatively (B) the claims are among the Retained Causes of Action that are reserved for the Liquidated Trust, and which the Sub-Trust may now assert. Neither argument succeeds.

### A. Whether the Claims Constitute Designated Retained Causes of Action

The first issue is whether the asserted claims in this case are among the "Designated Retained Causes of Action." They are not.

The Liquidation Trust Agreement provides that the Sub-Trust "shall be empowered" to, "pursue Designated Retained Causes of Action that are transferred to the [Sub-Trust] to the extent that their pursuit would likely result in a material economic benefit to Holders of Unsecured Claims Under the Plan." ECF No. 15-12 § 2.3(a). The Unsecured Claim Pool Sub-Trust Assets include (i) a settlement payment and (ii) the Designated Retained Causes of Action. ECF No. 15-12 § 1.1(uu).

Relevant here, Designated Retained Causes of Action include: "[c]auses of action that the Debtors might be able to assert related to the retention and employment of [Mirman]." ECF No. 15-12 § 1.1(n).

The parties dispute whether the claims stated in the Complaint are "related to the retention and employment of [Mirman]." *Id.* The entirety of the Complaint's allegations related to Mirman are as follows. Mirman was previously Debtors' Director and CEO. ECF No. 1 ¶ 24. The Complaint alleges that, after "the S.E.C. brought an enforcement action against Mr. Mirman for alleged securities violations stemming from previous employment," Defendants "used the S.E.C. action as a pretense to expel Mr. Mirman and gain complete control of the company to ransack it for their personal profit." *Id.* ¶¶ 24-25. The Complaint alleges that, after ousting Mirman, Defendants breached their fiduciary duty and manipulated data to personally enrich themselves. *Id.* ¶¶ 26-27.

But the claims that the Sub-Trust now asserts are not "related to the *retention and employment* of [Mirman]." ECF No. 15-12 § 1.1(n) (emphasis added). Rather, the Sub-Trust

5

asserts that Defendants improperly *terminated* Mirman so that they could more easily pursue their unlawful aims. Even assuming that the Sub-Trust's claims relate to the termination of Mirman, termination is not the same as "retention and employment." The reservation of claims related to the retention and employment of Mirman does not "specific[ally] and unequivocal[ly]" include claims related to his termination. *United Operating*, 540 F.3d at 355.

Accordingly, the asserted claims in this case are not among the Designated Retained Causes of Action that the Sub-Trust retained.

### B. Whether the Claims Constitute Retained Causes of Action

The parties next dispute whether the asserted claims in this case constitute "Retained Causes of Action." They do not.

The Liquidation Agreement provides that "[t]he Liquidation Trustee shall have and may enforce . . . the Retained Causes of Action." ECF No. 15-12 § 3.2.[1] Retained Causes of Action include "those Causes of Action identified on the Schedule of Retained Causes of Action other than the Designated Retained Causes of Action." *Id.* § 1.1(*ll*).

In arguing that the asserted claims constitute Retained Causes of Action, the Sub-Trust points to Plan Supplement Schedule A(ii). ECF No. 15-13 at 9. Schedule A(ii) provides:

---

[1] The Sub-Trust argues that, even though the Retained Causes of Action are reserved for the Liquidation Trust, the Sub-Trust may nonetheless assert them. Section 9.9 of the Liquidation Trust Agreement, which provides that "[u]pon completion of all distributions . . . , the Liquidation Trustee shall resign," and "the Unsecured Claim Pool Sub-Trustee shall assume all duties and responsibilities of the Liquidation Trustee under the Plan and this Agreement." ECF No. 15-11 § 9.9; *see* ECF No. 16 at 18-19. Defendants contend that the Sub-Trust did not acquire the Retained Causes of Action because the provision states only that the Sub-Trustee assumes the duties and responsibility of the Trustee, not that the Sub-Trust acquires the Trust's assets." *See* ECF No. 17 at 7. The Court agrees that the Liquidation Trust Agreement is silent as to what happens to the Liquidation Trust's assets when the Trustee resigns. However, the Court need not decide this issue because, even if the Sub-Trust had acquired the Retained Causes of Action, the claims that the Sub-Trust now asserts are not among them.

6

> Unless otherwise released . . . , the Liquidation Trustee expressly reserves all Causes of Action, including any claims, defenses, and counterclaims against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding against the Debtors . . . including, without limitation . . . directors [and] officers[.]

*Id.* The Sub-Trust argues that the Retained Causes of Action include "any claims . . . against or related to all Entities . . . that may in the future become party to litigation, and, therefore, the claims at issue in this suit are properly included in this category. *See* ECF No. 16 at 11, 19-20.

The Sub-Trust's argument is not persuasive. First, Schedule A(ii) refers to "claims, defenses, and counterclaims against or related to all Entities . . . that may in the future become a party to litigation . . . against the Debtors." ECF no. 15-13 at 9. The Sub-Trust does not contend that Defendants are parties to litigation against the Debtors.[2] To the extent that the Sub-Trust argues that Defendants *could* potentially become parties to litigation against the Debtors in the future, this argument does not succeed for several reasons. First, it is unsupported. Second, the Reservation is insufficiently specific to include the types of claims at issue here. Any number of entities or individuals *could* become a party to litigation, but that potential, without more, is not enough. Interpreting that Schedule A(ii) so broadly would make Schedule A(ii) insufficiently specific to put creditors on notice of the reserved claims. *See Texas Wyoming*, 647 F.3d at 550. A better interpretation of Schedule A(ii) that provides the requisite notice is that, should an entity or individual in the future become a party to litigation against the Debtors, then all claims, defenses, and counterclaims against them would be among the Reserved Causes of Action. That is not the case here, so the claims fall outside of Schedule A(ii). Thus, even assuming the Sub-Trust can bring Retained Causes of Action, it still cannot bring the claims that it asserts here.

---

[2] The Debtors are not a party to this suit.

## IV. CONCLUSION

In sum, the claims at issue in this suit do not constitute either "Designated Retained Causes of Action" or "Retained Causes of Action." Accordingly, the Sub-Trust may not assert them. Therefore, Defendants' Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 17th day of April, 2023.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE